UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ROBERT R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1655-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Robert R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 12) is **GRANTED**, the Commissioner's motion (ECF No. 14) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on October 5, 2018, alleging disability beginning October 1, 2017 (the disability onset date), due to "degenerative back issues-irregularly fused discs; genetic spine deformity; and severe ADHD and ADD." Transcript ("Tr.")

16, 130-37, 151. The claims were denied initially on December 10, 2018, after which Plaintiff requested a hearing. Tr. 16. On August 21, 2019, Administrative Law Judge Robert Wright (the "ALJ") conducted a video hearing from Albany, New York. *Id*. Plaintiff appeared and testified in Rochester, New York, and was represented by Nicholas Divirgilio, an attorney. *Id*. David Vandergoot, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 11, 2019, finding that Plaintiff was not disabled. Tr. 16-23. On September 21, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 11, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

3

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his September 11, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2. The claimant has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq*.).

3. The claimant has the following severe impairment: lumbar degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b).[1]

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 3, 1989 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 16-23.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on October 5, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 23. The ALJ also determined that based on the application for supplemental security benefits protectively filed on October 5, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts three points of error. Plaintiff first argues that the ALJ determined Plaintiff's RFC based on his own lay interpretation of the raw medical record and failed to provide a function-by-function analysis. *See* ECF No. 12-1 at 1, 10-16. Plaintiff next argues that the ALJ relied on "cherry-picked and misrepresented evidence" to support the RFC. *See id*. at 1, 16-21. Finally, Plaintiff argues that the ALJ erred at step two by finding ADHD Plaintiff 's attention deficit hyperactive disorder ("ADHD") non-severe, or in the alternative, failing to account for the non-severe impairment in the RFC. *See id*. at 1, 21-22. Thus, according to Plaintiff, the ALJ's RFC determination and his decision were unsupported by substantial evidence.

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's back symptoms would not preclude light work. *See* ECF No. 14-1 at 13-16. Additionally, argues the Commissioner, the ALJ accurately and fairly summarized the evidence. *See id*. at 16-20. Finally, the Commissioner argues that substantial evidence supports the ALJ's

finding that Plaintiff failed to show that ADHD resulted in any functional restrictions material to an ordinary work setting. *See id*. at 21-25.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record and the ALJ's decision, the Court finds that Plaintiff's first point of error—that the ALJ determined Plaintiff's RFC based on his own lay interpretation of the raw medical record and failed to provide a function-by-function analysis—has merit. *See* ECF No. 12-1 at 10-16. The ALJ concluded that Plaintiff had the physical RFC for a full range of light work despite the absence of any medical opinion evidence in the record regarding Plaintiff's functional abilities or work capacity limitations, relying instead on the "clinical findings and diagnostic imaging" to support the RFC. Tr. 20-21. While the ALJ did discuss some of the treatment notes in the record, they generally contained only bare medical findings and did not address how Plaintiff's impairments affected his ability to perform work-related functions. Therefore, the ALJ necessarily relied on his own lay judgment to evaluate the medical records and formulate the RFC, and the Court finds there is a reasonable basis for doubt as to whether the ALJ's determination that Plaintiff was capable of light work is supported by substantial evidence. Tr. 20-22. Accordingly, remand is warranted.

As a general rule, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional

capabilities," the Commissioner "may not make the connection himself." *Perkins v. Berryhill*, 2018 WL 3372964, at * 3 (W.D.N.Y. July 11, 2018) (internal quotation marks omitted) (citing *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination."). Only in limited circumstances, such as "when the medical evidence shows only minor physical impairments, [may] 'an ALJ permissibly . . . render a common[ ]sense judgment about functional capacity even without a physician's assessment.'" *Perkins*, 2018 WL 3372964, at * 3 (citing *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015).

The ALJ in this case failed to adhere to this fundamental principle. A brief summary of the ALJ's analysis of the medical evidence helps to highlight his error. First, the ALJ summarized several portions of examinations with primary care physician Keith Fuleki, D.O. ("Dr. Fuleki"), in February 2018 (Tr. 20-21, 236); with neurology specialist Andrew C. Hilburger, M.D. ("Dr. Hilburger"), in February 2018 (Tr. 20, 207-08); and with nurse practitioner Susan Smith ("Ms. Smith") in May 2018 (Tr. 20, 255). The ALJ also discussed the abnormal lumbar MRI from March 2018. Tr. 20-21, 209.

The ALJ noted that Dr. Fuleki's examination was "completely normal" in July 2018. Tr. 21. However, Dr. Fuleki did not treat Plaintiff in July 2018. Tr. 213-69, 278-82, 308-10. The ALJ cited this to Exhibit 6F; however, this was an appointment on December 21, 2018, which focused on Plaintiff's panic attacks rather than his back. Tr. 279. In any event, Plaintiff's back exam during this visit was not "completely normal" as the ALJ stated. Tr. 21, 281. Rather, Plaintiff's back exam

revealed TART[2] changes, positive straight leg raising on the left at T1-T4, tenderness to palpation in the paraspinals, and hypertonicity with asymmetry mostly on the right. *Id.*

The ALJ may have been referring to a June 2018 treatment note, wherein Dr. Fuleki reported that Plaintiff had deferred a full back examination. Tr. 228. During that visit, Dr. Fuleki also observed that Plaintiff 's back pain was "a bit inexplicable," as Plaintiff was often unable to provide details or concrete descriptions of his pain. Tr. 229. Dr. Fuleki also noted that, although on some visits Plaintiff presented with "marked spasm of the entire paraspinal column" that was "clearly evident" on a visual examination, other days were normal. *Id.* Even if this is the treatment note the ALJ intended to reference, this is not a blanket statement that Plaintiff 's back exam was normal, as suggested by the ALJ. Tr. 21. In fact, during this appointment, while Plaintiff deferred a full back exam, Dr. Fuleki noted Plaintiff 's stiffness with movement and that he appeared less comfortable with sitting over time. Tr. 228.

The ALJ went on to explain that other evidence was inconsistent with Plaintiff 's allegations. Tr. 22. He stated that while Dr. Hilburger noted "significant clinical findings," they were not confirmed by EMG or MRI findings. Tr. 22. However, this is not consistent with the imaging results. While Plaintiff 's thoracic MRI was normal, a lumbar MRI on March 5, 2018, revealed lumbar spondylosis without compression. Tr. 209. There was broad disc protrusion at L4-5, with facet hypertrophy, moderate canal stenosis, and lateral recess stenosis effacing the L5 roots, most severe on the left. *Id.* At L3-4, there was disc bulge with facet hypertrophy and lateral recess stenosis effacing the L4 roots mildly. *Id.* The canal was mildly stenotic, and there was an intraforaminal disc bulge effacing the right L3 root. *Id.* There was a leftward disc bulge at L2-3,

---

[2] "TART" is an osteopathic mnemonic device for the most common findings in somatic dysfunction: Tenderness; Asymmetry; Restricted motion; Tissue texture changes. "TART." Thefreedictionary.com, https://medical-dictionary.thefreedictionary.com (Oct. 14, 2022).

with facet hypertrophy and mild canal stenosis and lateral recess stenosis mildly effacing the left L3 root. *Id*. The L5 body was small and tapering in shape compared with the L4, and the report noted possible "transitional L5 body, which would change the disc numbering." Tr. 210.

Without any opinion evidence, the ALJ improperly relied on his own lay interpretation of the MRI and treatment notes to conclude that Dr. Hilburger's "significant clinical findings" were unconfirmed by imaging. Tr. 22, 209. *See Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at \*18 (W.D.N.Y. May 7, 2014) (remanding where ALJ made RFC using her own lay interpretation of the raw medical evidence); *Shamone W. v. Comm'r of Soc. Sec.*, No. 19-CV-1169MWP, 2021 WL 1015934, at \*6 (W.D.N.Y. Mar. 17, 2021) (quoting 2014 WL 1806779) ("RFC not supported by substantial evidence where . . . the ALJ formulated the RFC 'through her own interpretation of various MRIs and x-ray reports contained in the treatment records.'").

Lacking any medical opinion to support the RFC, the ALJ was also required to perform a function-by-function analysis of Plaintiff's work-related limitations, which the ALJ did not do in this case. "When the ALJ does not rely on a medical opinion to formulate the RFC, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Perkins*, 2018 WL 3372964, at \*3 (W.D.N.Y. July 11, 2018) (citing *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at \*8 (W.D.N.Y. Sept. 3, 2013); *Jermyn*, 2015 WL 1298997, at \*19 (remanding when ALJ relied on record with no expression of functional limitations). The ALJ must "make a function[-]by[-]function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." *Melanie M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-571 (CFH), 2020 WL 4335495, at \*4 (N.D.N.Y. July 28, 2020) ((quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); (citing SSR 96-8p)). In this case, the ALJ made a passing mention of

Plaintiff's difficulty standing and walking while considering other evidence but did not mention carrying, pushing, pulling, reaching, handling, stooping, or crouching at all.

Ultimately, is not clear to the Court how the ALJ was able to glean from the bare medical data that Plaintiff could perform the full range of light work with no limitations. Because the ALJ improperly substituted his own lay opinion in formulating Plaintiff's RFC, his decision is not supported by substantial evidence. *See Sherry v. Berryhill*, 2019 WL 441597, at \*5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); *Perkins*, 2018 WL 3372964, at \*4 ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

Along the same lines, the absence of any treating source opinion regarding Plaintiff's physical impairments created a gap in the evidentiary record that the ALJ was obligated to fill. The Commissioner argues that, because Plaintiff failed to meet his burden to adduce evidence supporting a more limited RFC, the ALJ's decision is supported by substantial evidence. *See* ECF No. 14-1 at 19. However, that does not relieve the ALJ of his obligation to develop the record. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every

reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez*, 77 F.3d at 47). And the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).

The Agency's own regulations reflect this duty, stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d)(1). The regulations explain that "every reasonable effort" means that "we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." *Id*. § 404.1512(d)(1)(i).

In this case, as the ALJ acknowledged, there was no medical opinion evidence for the period at question. Tr. 22. Yet, there were several ways for the ALJ to fill the gap he acknowledged: he could have requested additional information from the treating physician; he could have obtained an SSA consultative examination; and/or he could have requested an opinion from a medical expert. *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (citation omitted). However, because the ALJ took none of those steps, the Court finds that this unfilled gap requires remand. *See, e.g.*, *id*. (remanding where "the only two medical opinions in the record were Dr. Pataki's

opinion, which reached no conclusion regarding Plaintiff's physical capabilities, and Dr. Mafi's opinion, which the ALJ properly found was not material to the relevant time period"); *Gipps v. Berryhill*, 2019 WL 1986518, at *6 (W.D.N.Y. May 6, 2019) (remanding because "[d]uring the relevant period under review, there is no opinion of record by a treating physician or other medical provider that plaintiff was able to work and/or was ready to return to work or was capable of doing light work with the limitations found by the ALJ").

The Commissioner points out that medical source statements requested from Dr. Fuleki and Dr. Hilburger were returned incomplete, appearing to suggest that Plaintiff's providers did not support his disability claim. *See* ECF No. 14-1 at 2. However, the Court declines to speculate as to why the forms were not completed, and as noted above, the ALJ could have requested additional information from these treating physicians.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

On remand, the ALJ should develop the record as necessary, and if warranted, obtain opinions as to Plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional

capacity evaluation. *See Martin v. Berryhill*, 16-cv-6184-FPG, 2017 WL 1313837, at *4 (citing *Covey*, 204 F. Supp. 3d at 507.

## **<u>CONCLUSION</u>**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE